**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**ROCKEY LYNN SHOOK, JR.**                                                **PLAINTIFF**

**vs.**                                            **CIVIL ACTION NO. 3:10-CV-00117-SAA**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SSA**                                                **DEFENDANT**

**MEMORANDUM OPINION**

       This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Rockey Lynn Shook, Jr. for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed applications for POD, DIB and SSI on October 18, 2006, alleging disability beginning on October 31, 2005. Docket 9, p. 38- 41; 99- 107, 131. Plaintiff's claim was denied initially (Docket 9, p. 38- 39) and on reconsideration. Docket 9, p. 40- 41. He filed a request for hearing (Docket 9, p. 69) and had a representative at the administrative hearing on May 4, 2009.[1] Docket 9, p. 14- 36. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 3, 2009 (Docket 9, p. 45- 54), and the Appeals Council denied plaintiff's request for a review. Docket 9, p. 6- 10. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the

---

[1]The transcript from the hearing lists Sandra Burton as an attorney (Docket 9, p. 17) and the plaintiff addressed her as his attorney (Docket 7, p. 12) but, it appears that Sandy Burton is a "disability representative," not an attorney. Docket 9, p. 11.

proceedings in this case under 28 U.S.C. § 636©, the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on November 24, 1980 (Docket 9, p. 99) and was a "younger individual" during the pendency of his application. He has a tenth grade education and previously worked as a dockhand, heating and air conditioning installer helper, maintenance worker, furniture loader and carpet layer helper. Docket 9, p. 32. Plaintiff claimed disability due to back injuries and a learning disability. Docket 9, p. 131.

The ALJ determined that plaintiff suffered from "severe" impairments, including "back disorders and borderline intellectual functioning" (Docket 9, p. 47), but that the plaintiff failed to demonstrate the required severity under 20 C.F.R. §§ 404.1521 and 416.921 for depression and rib fractures. Docket 9, p. 49-50. The ALJ found that the plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1525, 404.1526 and 416.926). He concluded that the plaintiff's back disorders did not meet the criteria of Listings 1.00, 11.00 and 14.00 because his impairments did not result in an inability to ambulate effectively or an inability to perform fine and gross manipulation. Docket 9, p. 50. In evaluating the plaintiff's intellectual functioning, the ALJ found that the requirements of Listing 12.05 were not demonstrated because plaintiff experienced only mild restrictions of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. Docket 9, p. 50.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual

Functional Capacity (RFC) to

> lift 20 pounds occasionally and ten pounds frequently. He can stand and walk for six hours and can sit for six hours in an eight-hour work day. He can perform pushing and pulling to the extent of 20 pounds. The claimant regarding mental retains "poor" – defined as "seriously limited but not precluded" – ability to understand, remember, and carry out complex job instructions and "fair" – defined as "limited but satisfactory" – ability to understand, remember, and carry out detailed job instructions.

Docket 9, p. 50-51. The ALJ found that the plaintiff's impairments "can be expected to impose symptoms as he alleges" but not with the "intensity, persistence, and limiting effects as he alleges" (Docket 9, p. 51) and found the plaintiff's subjective complaints and hearing testimony "less than fully credible."[2] Docket 9, p. 52.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent him from performing his past relevant work. Docket 9, p. 52. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform unskilled jobs performed at the light level of exertion such as a laundry folder and production assembler. Docket 9, p. 34-35. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and he therefore was "not disabled" under the Act. Docket 9, p. 53.

---

[2]The ALJ noted that the plaintiff's allegations of stringent functional limitations are "greatly disproportionate to the objective evidence." Docket 9, p. 52. Although the plaintiff testified that he could not lift one gallon and must lie down for one-half of an ordinary eight-hour work day, he does not take any prescription strength medication and has sought limited medical treatment. *Id.* "His assertion that his back pain travels merely upwards to his neck constitutes an implicit concession of the absence of any true radicular symptoms (that is, to the lower extremities). His conceded abilities to drive a vehicle and perform grocery shopping undercut any suggestion of any debilitating mental limitations based upon his demonstrated borderline intellectual functioning." *Id.*

The plaintiff claims that the ALJ's decision was not supported by substantial evidence because he failed to address some of the plaintiff's limitations – annular bulges (or tears) and cystic changes. Docket 12, p. 7-8. He further claims that the ALJ failed to develop the record involving depression and broken ribs, including failure to obtain a consultative mental examination for evaluation of depression. Docket 12, p. 8-10. According to the plaintiff, the ALJ additionally substituted his opinion for that of the qualified health professionals in formulating the mental portion of the RFC. Docket 12, p. 10-12.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[6] At step three, the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7] If plaintiff

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[4]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any

does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a

---

gainful activity." 20 C.F.R. § 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[9]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[10]*Muse*, 925 F.2d at 789.

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since October 31, 2005, satisfying step one. Docket 9, p. 27-28, 47. The ALJ found at step two that plaintiff's back disorders and borderline intellectual functioning were severe impairments but that his depression and rib fractures were not "severe." Docket 9, p. 47-50. At step three, the plaintiff's severe impairments did not meet the stringent requirements set out in the listings[13] and the ALJ determined that the plaintiff retained the functional capacity to perform a full range of light work. Docket 9, p. 50-52. The ALJ concluded that the plaintiff could not return to his past work at step four. Docket 9, p. 52. The ALJ's step five determination that plaintiff was capable of performing other work resulted in a finding of "not disabled" under the Act. Ex. 3, p. 19-20.

---

[13] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

The plaintiff argues that the ALJ did not consider each of his impairments at step two, and specifically that he did not consider evidence of "annular bulges (or tears) and cystic changes" in his evaluation of the plaintiff's back disorders. Docket 16, p. 7-8. In response the Commissioner points out that the ALJ considered medical records from multiple physicians for various back problems to determine that the plaintiff had a "combination of severe impairments best described as back disorders." Docket 13, p. 7-8. According to the Commissioner, the ALJ was not required to explain each piece of evidence, and the absence of the words "annular" and "cyst" in his decision does not indicate a failure to consider the MRI results. Docket 13, p. 8.

In determining whether the plaintiff's back disorders were severe, the ALJ discussed the record medical evidence and demonstrated that he reviewed the record, including the plaintiff's MRI results, which included a diffuse annulus bulge, two mild diffuse annulus bulges, one moderate diffuse annulus bulge and "some cystic change seen in the inferior endplate." Docket 9, p. 221. The ALJ specifically noted bulging[14] in his decision and, although he did not use the term "annular bulging," the record does not contain any evidence that the ALJ "did not understand the significance of the annula's role in protecting the spine," as the plaintiff alleges. Docket 16, p. 6.[15] It is clear that the MRI results do not contain evidence of a tear. The ALJ did

---

[14]The ALJ noted that "[a] lumbar MRI performed in February 2007 failed to adduce any showing of a disc rupture, however. The MRI showed bilateral neuro-foraminal narrowing at the L5-S1 level and "mild" bulging and "mild" bilateral neuro-foraminal narrowing at the L3-4 and L4-5 levels." Docket 9, p. 49.

[15]In support of this argument, counsel attached an article about a study of the association between annular tears and disc degeneration. Docket 12, Exhibit 1. The article is not part of the record on appeal. This court previously has admonished counsel that it will not consider exhibits or information which is not a part of the administrative record. *Hervey v. Astrue*, No. 2:09cv165, 2010 WL 3258623 at *5 (N.D. Miss. Aug. 16, 2010). Not only is the article not properly before the court, but it is irrelevant as there is no evidence in the record of an annular "tear."

not have a duty to evaluate an impairment that was not contained in the record or alleged by the plaintiff.

The plaintiff's disability applications[16] and his hearing testimony[17] allege general back injuries and pain. The ALJ identified the relevant Listings – 1.00, 11.00 and 14.00 – for the back impairments contained at various points in the record.[18] He discussed the evidence and concluded that the balance tipped toward functional ability as required in determining whether the plaintiff's impairments met or equaled a Listing Impairment. *Burnett v. Commissioner of Social Sec.*, 220 F.3d 112, 119-20 (3rd Cir. 2000). Although the plaintiff argues that annular bulges and cystic changes should have been evaluated as separate impairments, he does not explain what additional Listings should have been considered or point to any evidence contained in the record that demonstrates the required severity of any listing. Consequently, the undersigned finds that the ALJ properly evaluated the plaintiff's back disorders.

At step two in the sequential process, the ALJ found that because the plaintiff failed to establish the required severity for depression and rib fractures,[19] they were not severe

---

[16]The plaintiff's original application, stating an onset date of October 31, 2005, allege"[c]ar accident injuries in the back" and a learning disability. Docket 9, p. 131. The plaintiff supplemented his disability report, continuing to report general back pain. Docket 9, p. 168-173, 179-183.

[17]The plaintiff testified to constant back pain on the right side and in the center of his back, measuring 7.5 out of 10 on a pain scale. Docket 9, p. 20-21.

[18]For example, the ALJ noted Dr. Lowe's diagnosis of a mild congenital back problem in 2006, emergency room findings of mild degenerative changes and acute myofascial strain in 2006, bulging and narrowing found on the 2007 MRI and degenerative osteoarthritis diagnosed by Dr. Duggar in 2009. Docket 9, p. 47-52.

[19]The plaintiff contends that the ALJ failed to develop the record for plaintiff's rib fractures but merely submits that considering this point "could 'push plaintiff over the top.'" Docket 9, p. 9. Without more, and in light of the medical evidence that the fractures were acute

impairments. Docket 9, p. 49-50. The plaintiff claims that the ALJ failed to develop the record involving depression. Docket 16, p. 8-10. He concedes that the plaintiff's borderline intellectual function was properly evaluated but argues that "the ALJ erred by not getting a "qualified mental health professional" to assess plaintiff's level of impairment from depression . . ." Docket 16, p. 9.

A consultative psychological evaluation was performed by Harold Savell, Ph.D. on November 20, 2006. Docket 9, p. 195-199. Dr. Savell assigned the plaintiff a Full Scale I.Q. score of 72 and determined that he was "currently functioning within the lower borderline range." The record does not contain any evidence that Dr. Savell limited his report to evaluation of the plaintiff's intellectual functioning or excluded evaluation of depression. Furthermore, the report specifically includes plaintiff's general mental status:

> "I did not observe any unusual behaviors or mannerisms. Eye contact was good. Mr. Shook denied being fearful. He denied much worry. He is not generally sad. He reported a good appetite. He sleeps OK. He denied any history of suicidal thoughts. He denied any history of hallucinations. He is not delusional. He denied use of alcohol or drugs. His thoughts are connected and logical."

Docket 9, p. 196-197.

Based on Dr. Savell's examination, Amy Hudson, Ph.D. completed a "Psychiatric Review Technique" form dated December 2, 2006. Docket 9, p. 200-212. Dr. Hudson found that the plaintiff suffered from "mild restrictions of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation." Docket 9, p. 210. Although Dr. Hudson's report assessed the

---

and nondisplaced, this argument simply does not provide a sufficient basis for the court to address the plaintiff's claim or conclude that the ALJ's finding was in error.

plaintiff's borderline intellectual functioning under Listing 12.02, she clearly demonstrated her consideration of possible symptoms of depression in reporting "mild social, cognitive and adaptive limitations due to depressive symptoms. He would be capable of performing routine, repetitive tasks without excessive interruptions from psychologically based symptoms." Docket 9, p.212.

After a careful review of the record, the undersigned finds that the plaintiff failed to show that he has a medically severe impairment as required to be eligible for disability benefits. *Bowen v. Yuckert*, 482 U.S. 137, 148 (1987). In the Fifth Circuit,"an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, (5th Cir. 1985). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.

The plaintiff argues that because depression is found throughout the record, a separate mental status evaluation was necessary. Certainly, the ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). However, given that evidence of depression symptoms is actually minimal[20] and the record does not reflect any diagnosis of depression, this argument is without merit. A whiff of a chance that a specific evaluation might determine that

---

[20]Plaintiff's supplemental brief cites four examples of evidence of depression: (1) the ALJ's decision (TR 43); (2) a school attendance record that does not appear to mention depression (TR 138); and (3) & (4) Dr. Hudson's report. (TR 200, 202). Docket 16, p. 11.

plaintiff suffers from depression, especially in the complete absence of any documented medical evidence that he has complained of or sought treatment for depression, is simply not enough. An ALJ has the duty to investigate, but that duty "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated in the record, *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1996). Therefore, the ALJ was not bound to sniff out every mere possibility to meet his obligation to assure that the record is complete.

The plaintiff argues that the record does not contain an "affective" assessment and, rather than relying on the opinions of qualified health professionals, the ALJ "invented" a mental RFC. Docket 16, p. 11-13. The mental portion of the RFC states that the plaintiff has "'poor' – defined as "seriously limited but not precluded" – ability to understand, remember, and carry out complex job instructions and "fair" – defined as "limited but satisfactory" – ability to understand, remember, and carry out detailed job instructions." Docket 9, p. 50-51.

The ALJ gave weight to Dr. Savell's mental assessment finding that "[h]e does have some limited intellect which would make it difficult for him to train for a sedentary job. He is able to understand and follow simple instructions and remember well enough to function in a simple vocational environment based upon his mental ability alone. His primary limitations are apparently physical in nature; although he does have some mild limitations due to his lowered intellect. He certainly would not be able to work in any occupation requiring written expression or any significant reading. He is able to figure well enough to manage his own finances." Docket 9, p. 198. Because Dr. Savell's report supports the ALJ's RFC, and the record does not contain evidence to refute his findings, this argument must fail. The plaintiff certainly could have provided an additional mental medical source statement from a treating physician or other

mental health expert to refute the consulting doctor's findings or provided evidence of limitations from depression; the absence of such an opinion does not support the plaintiff's contention that the ALJ substituted his judgment for that of a medical expert.

Consequently, the undersigned finds that the record did not support a finding of disabled under the Act. The record contained, and the ALJ demonstrated, adequate evidence to ensure that the ALJ's decision was supported by substantial evidence. Therefore, the decision of the ALJ must be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

This, the 17th day of January, 2012.

      /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE